IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:16-CV-00002-D

**Mark Anderson Rook,**

        Plaintiff,

v.

**Nancy Berryhill**, Acting
Commissioner of Social Security,[1]

        Defendant.

**Memorandum & Recommendation**

Plaintiff Mark Anderson Rook instituted this action on February 2, 2016, to challenge the denial of his application for social security income. Rook claims that the Administrative Law Judge ("ALJ") Lisa R. Hall erred in finding that he was capable of performing other work, based on the testimony of a Vocational Expert ("VE"). Both Rook and Defendant Nancy Berryhill, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 16, 20.

After reviewing the parties' arguments, the court has determined that ALJ Hall reached the appropriate decision. There is substantial evidence to support her reliance on the VE's testimony that there were other jobs that existed that Rook could perform. Therefore, the undersigned magistrate judge recommends that the

---

[1] Berryhill replaced Carolyn Colvin as the Acting Commissioner of Social Security on January 20, 2017.

court deny Rook's motion, grant Berryhill's motion, and affirm the Commissioner's decision.[2]

I. Background

On July 27, 2010, Rook protectively filed applications for supplemental security income and disability benefits. In both applications, he alleged a disability that began on September 1, 2006. After his claims were denied at the initial level and upon reconsideration, Rook appeared at a hearing before an ALJ who determined that he was not entitled to benefits because he was not disabled. Tr. at 159–64. After seeking review with the Appeals Council, Rook's claim was remanded for further consideration.

Following the remand order, Rook appeared before ALJ Hall on March 14, 2014, to determine whether he was entitled to benefits. ALJ Hall determined determined Rook was not entitled to benefits because he was not disabled. *Id.* at 20–30.

ALJ Hall found that Rook had the following severe impairment: residual pain and weakness from quadriceps injury on the right side. *Id.* at 22. ALJ Hall found that this impairment, alone or in combination with non-severe impairments, did not meet or equal a Listing impairment. *Id.* at 24. ALJ Hall then determined that Rook had the RFC to perform light work with the following limitations: he can

---

[2] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

occasionally engage in postural activities;[3] he should avoid concentrated exposure to hazards such as unprotected heights or moving or dangerous machinery; and he requires a cane for support in standing and walking. *Id*. at 25. ALJ Hall concluded that Rook was unable to perform his past relevant work as a delivery person or utility worker. *Id*. at 28. However, considering his age, education, work experience, and RFC, ALJ Hall found that there were jobs that existed in significant numbers in the national economy that he was capable of performing. *Id*. These include: cashier, furniture rental clerk, or sales attendant. *Id*. at 29. Thus, ALJ Hall found that Rook was not disabled. *Id*. at 30.

After unsuccessfully seeking review by the Appeals Council, Rook commenced this action by filing a complaint pursuant to 42 U.S.C. § 405(g) on February 2, 2016. D.E. 5.

## II. Analysis

### A. Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson* v. *Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively* v. *Heckler*,

---

[3] Postural activities include stooping, crouching, climbing, balancing, kneeling, or crawling. *Bogie v. Colvin*, No. JKS-11-3700, 2014 WL 31884, at *2 (D. Md. Jan. 3, 2014).

739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith* v. *Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

    **B.**    **Standard for Evaluating Disability**

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson* v. *Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Medical Background

The medical evidence reveals the following: Rook has experienced pain in his right shoulder, right leg, and lower back. Tr. at 68–69. In 2007, he missed some steps on a porch and fell on his right leg. *Id.* at 70. As a result of this injury, he has experienced problems with his leg giving out when he walks and, as a result, he uses a cane. *Id.* at 71.

Between 2007 and 2012, Rook visited the Halifax Regional Medical Center Emergency Department on several occasions. *Id.* at 26. An April 2007 x-ray of his cervical spine was normal. *Id.* A June 2010 x-ray of his right knee showed no abnormalities. *Id.* Additionally, December 2011 x-rays of his right shoulder and knee showed mild degenerative disease and a CT scan of his head was negative. *Id.* at 26–27. At these times, Rook received prescriptions for pain medication. *Id.* at 26. The record fails to disclose follow up treatment Rook received for these issues. *Id.*

Dr. Constant Masere performed a consultative examination on November 6, 2010. *Id.* at 445–49. Dr. Masere noted a slight loss of muscle strength in Rook's right hip upon flexation and atrophy in the right quadriceps. *Id.* at 26. Although Rook had a steady gait, he demonstrated some difficulty getting on and off the examination table. *Id.* Dr. Masere observed full strength in the upper and lower extremities except for the right hip and leg. *Id.* He opined that Rook could sit 2–3 hours, stand 1–2 hours, and walk 45 minutes in an 8 hour work day before

requiring a break; he could lift or carry up to 25 pounds; he is limited to occasional bending, stooping, or crouching;[4] and he requires use of a cane. *Id.* at 449.

On July 11, 2011, Dr. Mangaraju Kolluru performed a consultative examination. *Id.* at 469–74. Dr. Kolluru noted that Rook used a cane, but it was not prescribed by a provider. *Id.* at 471. Rook's spine and pelvis were non-tender with no swelling noted. *Id.* at 472. Dr. Kolluru also noted that Rook's right knee was not tender and showed no swelling, but that it showed pain on flexation and extension. *Id.* His right quadriceps showed atrophy. *Id.* Dr. Kolluru opined that Rook could perform activities of daily living and ambulate with a cane. *Id.* at 473.

State psychological consultant Charles Folkers, Ph.D., reviewed Rook's record on May 3, 2011. *Id.* at 135–49. He opined that Rook could comprehend and recall simple instructions, sustain focus on simple tasks, function socially in a position with limited public contact, and adapt to workplace conditions with a stable environment. *Id.* at 146. State agency medical reviewer E. Woods, M.S., M.D, reviewed Rook's medical record on August 11, 2011. *Id.* at 124–49. Dr. Woods opined that Rook could perform light work with limitations to no more than occasional climbing, balancing, stooping, bending, kneeling, crouching, and crawling. *Id.* at. 131–32. Dr. Woods also found that Rook should avoid concentrated exposure to hazards such as heights and machinery. *Id.* at 132.

---

[4] ALJ Hall states both that there was no limitation in these postural activities and that Dr. Masere limited Rook to only occasional bending, stooping, or crouching. Tr. at 26. A review of Dr. Masere's notes indicates that he (ALJ Hall incorrectly identifies Dr. Masere with the female pronoun) found Rook did have limitations in these postural activities. *Id.* at 449. Because ALJ Hall identified Dr. Masere's assessed limitations, her misstatement that there were no limitations is harmless error.

6

Rook testified that he lives with his mother in the first floor of the home. *Id.* at 72–73. He testified that he is able to do some household chores such as cleaning and cooking and he uses a wheelchair cart when he goes shopping. *Id.* at 73–74, 76. He also plays piano in church twice a month. *Id.* at 23.

### D. Vocational Expert/Step Five

Rook contends that ALJ Hall erred at step five in finding that there were other jobs that he was capable of performing. The Commissioner maintains, and the undersigned agrees, that ALJ Hall did not err at step five and that her findings are supported by substantial evidence.

While a claimant has the burden at steps one through four, it is the Commissioner's burden at step five to show that work the claimant is capable of performing is available. *Pass* v. *Chater*, 65 F.3d at 1203 (citing *Hunter* v. *Sullivan*, 993 F.2d 21, 35 (4th Cir. 1992)). "The Commissioner may meet this burden by relying on the Medical–Vocational Guidelines (Grids) or by calling a vocational expert [("VE")] to testify." *Aistrop* v. *Barnhart*, 36 F. App'x 145, 146 (4th Cir. 2002) (citing 20 C.F.R. § 404.1566)). The Grids are published tables that take administrative notice of the number of unskilled jobs at each exertional level in the national economy. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a).

When a claimant suffers solely from exertional impairments, the Grids may satisfy the Commissioner's burden of coming forward with evidence as to the availability of jobs the claimant can perform. *Grant* v. *Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983). When a claimant: (1) suffers from a non-exertional impairment that

7

restricts his ability to perform work of which he is exertionally capable, or (2) suffers an exertional impairment which restricts him from performing the full range of activity covered by a work category, the ALJ may not rely on the Grids and must produce specific vocational evidence showing that the national economy offers employment opportunities to the claimant. *See Walker* v. *Bowen*, 889 F.2d 47, 49 (4th Cir. 1989); *Hammond* v. *Heckler*, 765 F.2d 424, 425–26 (4th Cir. 1985); *Cook* v. *Chater*, 901 F. Supp. 971 (D. Md. 1995); 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h).

The Regulations permit testimony from a vocational expert to determine "whether [a claimant's] work skills can be used in other work and the specific occupations in which they can be used[.]" 20 C.F.R. §§ 404.1566(e), 416.966(e). In order for a vocational expert's testimony to be relevant, an ALJ's hypothetical question must represent all of a claimant's substantial impairments. *Walker*, 889 F.2d at 50; *Burnette* v. *Astrue*, No. 2:08-cv-0009-FL, 2009 WL 863372, at *4 (E.D.N.C. Mar. 24, 2009) (relevant hypothetical question should adequately reflect claimant's RFC and fairly set out a claimant's limitations). If limitations are omitted, the VE's testimony is of limited value, and may not constitute substantial evidence. *See Johnson*, 434 F.3d at 659 (citing *Walker*, 889 F.2d at 50).

Here, ALJ Hall found that Rook had additional limitations that precluded him from performing a full range of light work. These included limitations to only occasional postural activities, avoidance of exposure to hazards such as unprotected

8

heights and moving or dangerous machinery, and the use of a cane for support in standing and walking. Tr. at 25.

Given the presence of these additional exertional limitations, the Grids are not controlling but instead serve as a framework for the ALJ's analysis. ALJ Hall therefore sought the input of a VE as to other work Rook could perform compatible with his age, education, work experience, and RFC.

In posing hypothetical questions to the VE, ALJ Hall inquired about jobs for a person limited to light work with only occasional postural activities and avoidance of unprotected height and moving or dangerous machinery. *Id.* at 88–89. The VE identified three jobs: cashier, merchandise marker, and sales attendant. *Id.* at 89–90. ALJ Hall then asked about an individual limited to sedentary work with only occasional postural activities and avoidance of unprotected height and moving or dangerous machinery. *Id.* at 89. The VE identified three other jobs compatible for such a worker: election clerk, document preparer, and direct mail clerk. *Id.* at 89–90.

ALJ Hall next asked the VE about the availability of jobs if the individual needed a cane for support. *Id.* at 90. The VE stated that such a limitation would preclude light work but not sedentary work because a cane functionally limits one to sedentary work. *Id.* ALJ Hall inquired whether any light jobs would accommodate the use of a cane. *Id.* The VE stated that some cashier positions, such as parking lot cashier or self-service gas cashier, would accommodate the use of a cane. *Id.* at 90–91. She also identified the job of furniture rental clerks as one that

9

Case 2:16-cv-00002-D   Document 23   Filed 01/23/17   Page 9 of 15

would accommodate this restriction. *Id*. The VE also stated that some of the sales attendant jobs she had identified earlier would accommodate the use of a cane. *Id*. at 91. She reduced the numbers of such jobs available by 50 percent to reflect this additional limitation. *Id*.

Rook argues that although ALJ Hall included additional limitations in her RFC finding for light work, the hypothetical question to the VE, on which she relied, addressed only light jobs that could accommodate the use of a cane. Because the VE did not identify work that also included only occasional postural activities and avoidance of certain hazards, Rook contends that the testimony does not sufficiently reflect his RFC. Rook also contends that the VE's testimony supports a conclusion that he can perform only sedentary work which, given his background, would direct a finding of "disabled" under the Medical-Vocational Guidelines ("Grid Rules").

A review of the hearing transcript and the VE's testimony indicates that her responses addressed the RFC determination as found by ALJ Hall. ALJ Hall committed no error in relying on the VE's testimony because it reflected all of Rook's limitations in identifying other work he could perform.

First, the initial hypothetical questions posed to the VE included work at the light or sedentary levels with additional limitations for postural activities and hazards. Two of the jobs the VE identified—cashier and sales attendant—were also recognized as light positions that could accommodate the use of a cane. *Id*. at 89–91.

In identifying these two positions, the VE reduced the number of available jobs previously offered in response to the hypothetical for light work with

limitations for postural movements and hazards by fifty percent to reflect the additional limitation for use of a cane. *Id*. In response to the first hypothetical, the VE stated that there were 393,000 cashier positions nationally and 12,000 such positions in North Carolina. *Id*. at 89. There were 142,000 sales attendant jobs nationally and 3,600 such jobs in North Carolina. *Id*. After remarking that the use of a cane would reduce job availability by approximately fifty percent, the VE stated that there would be approximately 200,000 national cashier positions and approximately 6,000 such jobs in North Carolina. *Id*. at 90. Similarly, she stated that the sales attendant positions had availability of approximately 70,000 jobs nationally and approximately 1,800 jobs in North Carolina. *Id*. at 91.

Such numbers reflect an approximate reduction of fifty percent from the numbers of jobs identified for a reduced range of light work with and without the additional limitation to using a cane. Clearly, then, the VE's testimony identifying light work that accommodated an individual who used a cane incorporated the previous limitations set forth in the first hypothetical, that is, only occasional postural activity and avoidance of certain hazards.

Additionally, the VE identified the same Dictionary of Occupational Titles ("DOT") code for the cashier (DOT: 211.462-010) positions she identified in response to the first hypothetical, which addressed light work with additional postural and hazard avoidance limitations, and in response to the inquiry about light jobs accommodating the additional limitation for use of a cane. *Id*. at 89–90. Moreover, a review of the hearing transcript demonstrates that the sales attendant position

identified as light work which could accommodate the use of a cane referenced back to the same sales attendant position the VE identified as light work that required no more than occasional postural activity and avoided exposure to hazards such as unprotected heights and moving or dangerous machinery. In asking about light jobs that would accommodate the use of a cane, the following exchange took place:

> ALJ Hall: What about the sales attendant job you mentioned before?
>
> VE: Sales attendants –
>
> ALJ Hall: I'm really not sure what kind of sales you are talking about.
>
> VE: Usually retail, retail sales more than anything else. Some of those would. I would reduce the numbers because some do – some do not allow that. I'd reduce the numbers by approximately 50 percent, so approximately 70,000 nationally, and approximately 1,800 in North Carolina.

*Id.* at 91. It is reasonable to conclude that both the cashier and sales attendant positions permit limitations not only for only occasional postural activities and avoidance of certain hazards but use of a cane. Given the VE's testimony about the numbers of positions, it is apparent that these jobs exist is significant numbers in both the national economy and in this state.

Further, aside from occasional stooping as a sales attendant, which is within Rook's RFC, a review of the DOT codes for both the cashier position and the sales attendant position finds that there are no postural activities associated with these jobs. *See* DOT 211.462-010 (cashier II) and 299.677-010 (sales attendant). Further, work in these positions does not involve moving mechanical parts or exposure to high places. *Id.* Therefore, Rook's argument that the positions identified by the VE

as accommodating the use of a cane fail to also reflect his other limitations is without merit.

The DOT description for the furniture rental clerk position reflects that there may be occasional stooping and crouching, there is no climbing, balancing, kneeling, or crawling. *See* DOT 295.357-018. This work does not involve moving mechanical parts or exposure to high places. *Id*. While the this position was not identified as an appropriate position for the limitations set forth in the first hypothetical, it may be that the VE considered the postural and hazard avoidance limitations in citing this job as suitable work for an individual with Rook's RFC. However, while it appears clear that this position addresses all limitations set forth in Rook's RFC, it is not evident if the numbers of positions identified by the VE reflect all of Rook's limitations. Nonetheless, even discounting this job, the VE's identification of the two other positions—cashier and sales clerk—and ALJ Hall's finding that these two positions are jobs fall within Rook's RFC satisfies the Commissioner's step five burden. *See Fletcher* v. *Colvin*, No. 1:15-cv-166, 2016 WL 915196 at *9 (M.D.N.C. Mar. 4, 2016) (Commissioner's step five burden satisfied by identification of two jobs having availability of 18,000 nationally and 200 statewide and 18,000 nationally and 360 statewide, respectively).

Rook attempts to argue that the VE's testimony limited an individual who required a cane to sedentary work. However, the VE's additional testimony undoubtedly identified light jobs that would accommodate this limitation. Further, Rook's attorney asked the VE about the occupational base that would reflect the

13

following limitations: sitting two to three hours, standing one to two hours, and walking 45 minutes at a time in an eight hour workday before requiring a break; use of an assistive device for short and long distances and uneven terrain; lift and carry up to 25 pounds; and occasional bending, stooping, and crouching. Tr. at 92. The VE testified that such limitations would coincide with a limited light occupational base. *Id.*

The evidence does not support a finding that Rook was limited to sedentary work given his need to use a cane. Because he has an RFC for a reduced range of light work, not sedentary, the applicable Grid Rule does not direct a finding that he is "disabled." For these reasons, Rook's argument on this issue lacks merit.

### III. Conclusion

For the forgoing reasons, the court recommends that the court deny Rook's Motion for Judgment on the Pleadings (D.E. 16), grant Berryhill's Motion for Judgment on the Pleadings (D.E. 20), and affirm the Commissioner's decision.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive

further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Owen* v. *Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Dated: January 23, 2017

*Robert T. Numbers II* (signature)
_____
Robert T. Numbers, II
United States Magistrate Judge